UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LMG RHODE ISLAND HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| RHODE ISLAND SUPERIOR COURT, | ) | |
| PROVIDENCE COUNTY, HON. NETTI C. VOGEL, | ) | **VERIFIED COMPLAINT FOR** |
| and EUGENE J. MCCAFFREY, III, | ) | **DECLARATORY JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION AND PROCEDURAL HISTORY

1.      On April 25, 2018, Plaintiff LMG Rhode Island Holdings, Inc., publisher of *The Providence Journal* ( "*The Providence Journal*" or the "Newspaper"), initiated a declaratory judgment action in state court against Defendant Rhode Island Superior Court (Providence County) and filed an emergency motion seeking, among other things, to vacate the Court's (Vogel, J.) April 6, 2018 order prohibiting the Newspaper from interviewing jurors who convicted Jorge DePina of murdering his 10-year-old daughter ("April 6th Order").  *See LMG Holdings, Inc. v. Rhode Island Superior Court, Providence County*, Case No. PC-2018-2854 ("Superior Court Action") ("No one, no spectator, no one in the spectator section of the courtroom, is permitted to contact my jurors.").  In its emergency motion, the Newspaper also sought access to the jury list in the *DePina* case, which Judge Vogel reportedly had refused to provide.

2.      In direct response to the litigation, and over the Newspaper's objection, Judge Vogel sent a letter to the *DePina* jurors advising them that a reporter from *The Providence Journal* wanted to speak with them about their experience and that any juror wishing to be

interviewed should first contact Judge Vogel, who would then pass along the juror's contact information to the reporter. The letter made no mention of the April 6th Order prohibiting juror contact, unnecessarily and impermissibly positioned the Court as a gatekeeper between the reporter and the jurors, and undoubtedly had a chilling effect on the jurors' willingness to be interviewed in violation of the First Amendment.

3.      In its opposition to the Newspaper's emergency motion, the Superior Court revealed that, in addition to a master list of jurors who are eligible to be empaneled on a jury (also known as the "petit jury pool list"), the Clerk of the Court also prepares a "jury card" that identify the jurors actually empaneled in its civil and criminal cases, including the *DePina* case. These cards, which are derived from a master list of eligible jurors – an admittedly public document – are created by the Clerk of the Court during *voir dire*, and are believed to contain the name and/or badge number of each empaneled juror, the identity of counsel of record, the case caption, and the identity of the presiding judge. Defendant Superior Court took the position that a constitutional right of access does not extend to jury cards, in *DePina* and other cases. Relatedly, the Office of the Jury Commissioner has arbitrarily limited access to the petit jury list to 2 days a week, instead of each day the Commissioner's office is open for business. Restricting access to court records in this manner violates the Constitution and prevents the press from timely accessing newsworthy information.

4.      A hearing on the Newspaper's emergency motion was scheduled for May 14, 2018. With the hearing looming, and in apparent recognition that the April 6th Order violated the First Amendment, the Court (Vogel, J.) vacated the April 6th Order on May 7, 2018. Following the May 14th hearing, the Court granted defendant leave to file a supplemental brief and took the Newspaper's emergency motion under advisement. In light of changed circumstances since the

filing of the complaint – *viz*, the April 6th Order being vacated, the Newspaper's discovery of the existence of the jury cards, and the Jury Commissioner's statement that access to the petit jury list is limited to 2 days a week – the parties agreed (and informed the Court) that the Newspaper would file an amended complaint and motion.   Accordingly, the Court never ruled on the Newspaper's emergency motion.

5.      On May 16th, Jorge DePina was sentenced to life in prison.   At the commencement of the sentencing hearing, Judge Vogel announced that, following the proceeding, she would remain on the bench to make a few "comments."   The Newspaper's reporter attended the sentencing hearing.   Also in attendance were other Justices of the Rhode Island Superior Court, none of whom are believed to have had any direct involvement with or oversight of the *DePina* case.   Following the sentencing, Judge Vogel read a prepared statement in open court.   Judge Vogel occasionally looked at the Newspaper's reporter as she read and, upon information and belief, intended her statements to serve as a public rebuke of the efforts the reporter and *The Providence Journal* made to interview the *DePina* jurors and obtain access to judicial records, with the purpose of discouraging the Newspaper from its pursuit of access to judicial records on behalf of the public it serves.

6.      In her statement, Judge Vogel also noted that – in the future – she would "not preclude the media from contacting jurors."   Judge Vogel's statement contradicts the April 6th Order and her stated practice with respect to juror contact, made no mention of the Court's role as a gatekeeper, and was not an order of the Court.   Therefore, while the specific order in the DePina case has been lifted, there is nothing to stop the Court from continuing to impose post-verdict restrictions on access to jurors in future cases.

4833-0619-3768, v. 1

7.     *The Providence Journal* filed a Notice of Dismissal Without Prejudice of the Superior Court Action pursuant to Rule 41(a)(1) of the Rhode Island Rules of Civil Procedure on June 6, 2018.  By way of this action, *The Providence Journal* is seeking a judgment under the First Amendment of the Constitution of the United States of America and Rhode Island common law declaring that:    (a) post-verdict, in the absence of a compelling government interest demonstrated by specific, on-the-record factual findings, Judge Vogel may not prohibit the media from contacting jurors or otherwise impede the jury interview process; (b) the press and public are presumptively entitled to access to the so-called "jury card" from the *DePina* case as well as "jury cards" generated in other civil and criminal cases; and (c) the petit jury pool list shall be made publicly available during normal business hours of the Office of the Jury Commissioner.

## PARTIES

8.     Plaintiff LMG Rhode Island Holdings, Inc. is the publisher of *The Providence Journal*, an online and daily and Sunday newspaper distributed in Providence, Rhode Island, and vicinity.   The newspaper maintains its principal place of business at 75 Fountain Street, Providence, Rhode Island 02902.

9.     Defendant Rhode Island Superior Court, Providence County, is a trial court in this State duly constituted pursuant to Article X of the Rhode Island State Constitution.  The Superior Court is named as a defendant in its capacity as a "sealing authority" that denied access to judicial records. *See State v. Cianci*, 496 A.2d 139, 146 (R.I. 1985).

10.     Defendant Hon. Netti C. Vogel is an Associate Justice of the Rhode Island Superior Court sitting at the Frank Licht Judicial Complex, 250 Benefit Street, Providence, RI 02903.  Judge Vogel is named as a party in her official capacity as a Justice of the Superior Court as a "sealing authority" who denied access to judicial records. *Cianci*, 496 A.2d at 146.

11.     Defendant Eugene J. McCaffrey, III is the Jury Commissioner for the State of Rhode Island with a usual place of business at the Frank Licht Judicial Complex, 250 Benefit Street, Providence, RI 02903.   Commissioner McCaffrey is named as a party in his official capacity as the Jury Commissioner as a "sealing authority" who denied access to judicial records. *Cianci*, 496 A.2d at 146.

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

12.     This Court has jurisdiction under 28 U.S.C. § 1331, which states that "[t]he district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." *See also Okpoko v. Heinauer*, 976 F. Supp. 2d 305, 316 (D.R.I. 2011) ("For federal question jurisdiction, a plaintiff must allege a violation of his constitutional rights or a right created under federal law[.]" *Accord Therrien v. Hamilton*, 881 F. Supp. 76, 79 (D. Mass. 1995) (denying motion to remand to state court and holding that district court had jurisdiction over a complaint alleging protected conduct under the First Amendment of the United States Constitution which implicated a federal question).

13.     This Court has jurisdiction to issue a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil procedure and  28 U.S.C. §2201.

<h2 style="text-align:center">STATEMENT OF FACTS</h2>

A.     The *DePina* Case.

14.     In 2013, Jorge DePina was charged with murdering his 10-year-old daughter. During a three-week trial beginning in March 2018, DePina argued that his daughter did not die as a result of blunt force trauma as alleged by the prosecution, but from an injury sustained in a bicycle accident. *See State of Rhode Island v. Jorge DePina*, Case No. P1-2014-0001A.

4833-0619-3768, v. 1

15.    After deliberating for approximately eight hours, a jury comprised of five men and seven women, excluding alternates, returned a verdict on April 6, 2018, convicting DePina of second degree murder.

**B.    *The Providence Journal's* Extensive Coverage of the *DePina* Case.**

16.    The journalistic mission of *The Providence Journal* is to publish to its readers, in conformity with fair journalistic standards, the newsworthy information that it gathers. Consistent with this goal, the Newspaper often covers federal and state criminal court proceedings that have independent news value or have otherwise become a reasonable subject of public concern. The *DePina* case is a high profile and controversial case which has generated a significant level of public attention not only in the local community, but throughout all of Rhode Island.

17.    In view of the serious charges brought against DePina, his prosecution was closely followed by readers of *The Providence Journal* and by other Rhode Island news media.

18.    Since July 2013, *The Providence Journal* has extensively covered and reported on the arrest, charges, and court proceedings involving DePina. *The Providence Journal's* coverage of DePina's criminal case has included publication of the following news articles:

a.    July 5, 2013 (Pawtucket Man Charged With Murder of his 10-Year-Old Daughter);

b.    July 9, 2013 (Pawtucket Police Say Aleida DePina, 10, Was Badly Abused Before She Died);

c.    July 13, 2013 (Family Members Stand By Pawtucket Man Accused of Killing His Daughter);

d.    October 30, 2013 (Emotions Erupt At Bail Hearing For Murder Suspect Jorge DePina);

e.    January 2, 2014 (Pawtucket Man Indicted In Murder Of His 10-Year-Old Daughter);

4833-0619-3768, v. 1

f.   January 9, 2014 (Pawtucket Man Pleads Not Guilty To Murder Of His 10-Year-Old Daughter);

g.   March 19, 2018 (Father Charged With Killing 10-Year-Old Daughter On Trial);

h.   March 20, 2018 (Ex-Detective Testifies In Trial Of Dad Accused Of Beating Daughter To Death);

i.   March 22, 2018 (Ex-Girlfriend: Pawtucket Dad Accused Of Murdering his Daughter Hit, Yelled At the "Quiet" Girl);

j.   March 23, 2018 (Detective At DePina Trial: Daughter's Autopsy Led To Search Warrant for Fresh Evidence);

k.   March 26, 2018 (Detective: Video Shows Pawtucket Father Striking His Daughter Days Before Death);

l.   March 27, 2018 (Ex-M.E.: Looping Abrasions, Bruises Covered Pawtucket Girl's Back At Time of Death);

m.   March 28, 2018 (Medical Examiner: 10-Year-Old Died Of Intestine Tear Caused By Blunt Force Trauma);

n.   March 29, 2018 (State Rests In Trial of Pawtucket Man Accused of Killing Daughter);

o.   April 2, 2018 (Defense Rests In DePina Murder Trial With Account Of Girl's Bike Crash Days Before Death);

p.   April 5, 2018 (Jury Deliberations Begin In DePina Murder Trial);

q.   April 6, 2018 (Pawtucket Father Convicted Of Second-Degree Murder In Death Of Daughter); and

r.   May 16, 2018 (Judge sentences 'sadist' to life for beating his daughter to death).

True and correct copies of the above news articles in the computerized format in which they are maintained in the Newspaper's electronic archives are annexed hereto as **Exhibit A**.

19.   Kathleen Mulvaney is a Staff Reporter for *The Providence Journal*.  Since 2009, she has covered criminal proceedings in Rhode Island state and federal courts.  As a matter of policy and practice, *The Providence Journal* prohibits its reporters from contacting jurors while a

trial is ongoing. Reporter Mulvaney covered the *DePina* trial for *The Providence Journal.* With

the exception of opening statements, Reporter Mulvaney was in court every day of the trial.

**C.    Court Order Prohibiting Post-Trial Juror Interviews.**

20.    After the verdict was read and the jurors were discharged, Judge Vogel directed

the members of the general public, including the media, not to have any contact with the jurors

as follows:

> **No one, no spectator, no one in the spectator section of the courtroom, is permitted to contact my jurors.** If the jurors choose to contact anyone, that's upon them. This is for their protection. The jurors have completed their job, and when they leave here, and they will be escorted to the door or to the area where they catch their bus, unless they show great interest in speaking to the lawyers, and I mean these four lawyers, do not approach them. That is how it is. I want to protect their privacy. They have done their jobs, they've been here three weeks, and the attorneys on the case, if they want to speak to the jurors and the jurors showed interest in speaking to you, whole different story. But beyond that, if they don't show any interest, they have to be left alone. If you see them at Walmart, do not acknowledge that you know them. **In other words, I don't allow people to contact jurors.** They must be left alone to go on with their lives.

A true and correct copy of excerpts of the April 6, 2018, transcript is attached hereto as

**Exhibit B** (emphasis added).

21.    No findings were made on the record as justification for the Court's prohibition of

post-verdict press access to the *DePina* jurors. Moreover, despite the Court's admonition,

nothing was entered upon the docket limiting the press or public's access to the *DePina* jurors.

Nevertheless, Reporter Mulvaney understood that Judge Vogel's directive had the full force and

effect of an order of the Court. Accordingly, Reporter Mulvaney refrained from contacting any

of the jurors.

22.    In a written statement issued by Judge Vogel on May 16, 2018, the Judge

confirmed Reporter Mulvaney's understanding that the admonition regarding the jury was indeed

an order when the Judge "vacated the [April 6th] order." Hereinafter, Judge Vogel's prohibition on post-verdict press access to the jury may be referred to as the "April 6th Order." A true copy of "Comments From Associate Justice Netti C. Vogel, May 16, 2018" is attached hereto as **Exhibit C**.

23.     Reporter Mulvaney's regular practice is to interview jurors who consent to being interviewed at the conclusion of criminal cases. In her experience, court house interviews are a timely and effective manner of obtaining the jurors' views on the proceedings, and learning what information the jurors deemed relevant and how it influenced their deliberations is of interest to readers of *The Providence Journal* and promotes public understanding of the criminal justice system's operation. In the *DePina* case, Reporter Mulvaney was particularly interested to know how the jurors reacted to the defense's theory of the case – *viz.*, that DePina's daughter was injured when she fell from her bicycle.

**D.      Superior Court Denies *The Providence Journal's* Request to Vacate April 6th Order and For Access to Jury List.**

24.     On April 12, 2018, counsel for *The Providence Journal* sent a detailed four-page letter to Judge Vogel requesting that the Court vacate its April 6th Order. The letter included a comprehensive analysis of controlling First Amendment and common law principles, and established that the Court's categorical post-verdict ban on press contact with the *DePina* jurors violated the First Amendment. Judge Vogel did not respond to the letter, although she later addressed the Newspaper's request to interview members of the Jury in a statement she read in open court on May 16, 2018. *See* Exhibit C. A copy of the newspaper's April 12, 2018, letter is attached as **Exhibit D**.

25.     On April 13, 2018, Reporter Mulvaney sent an e-mail to the Court's spokesperson (Craig Berke) requesting a copy of the "jury list" in the *DePina* case. On April 16, 2018,

Mr. Berke e-mailed Reporter Mulvaney to advise that "Judge Vogel ha[d] denied [the] request" for a list of the jurors who deliberated in the *DePina* trial – which had concluded *eleven days earlier*. A true and accurate copy of the e-mail communications between Reporter Mulvaney and Mr. Berke is attached hereto as **Exhibit E**.

26.     In a memorandum of law submitted by the Rhode Island Superior Court on May 10, 2018, in the Superior Court Action, counsel for The Rhode Island Superior Court averred that Mr. Berke erred when he stated that it was Judge Vogel who denied *The Providence Journal's* request for the *DePina* jury list. *See* Defendant's Memorandum of Law In Support of Objection To Plaintiff's Emergency Motion for Public Access (hereinafter, the "Memorandum of Law"). According to the Memorandum of Law, Reporter Mulvaney's request was originally submitted to Judge Vogel, who referred the request to the "Presiding Justice and Court Administrator." The Memorandum of Law does not identify who ultimately made the decision denying the Newspaper's access to the jury list.

E.     ***The Providence Journal* Is Forced To Commence Litigation to Vindicate the Public's Presumptive Rights of Access.**

27.     Owing to Judge Vogel's refusal to timely vacate the April 6th Order and the Rhode Island Superior Court's refusal to grant access to the list of *DePina* jurors, *The Providence Journal* was left with no choice but to commence a civil action by preparing a verified complaint and emergency motion for public access, which it filed and served on April 25, 2018. The Newspaper's memorandum in support of the motion for public access cited almost all of the same authorities included in its April 12, 2018, letter to Judge Vogel.

28.     Approximately 1 hour after *The Providence Journal* filed its verified complaint, the General Counsel of the Superior Court (Julie Hamil) contacted the Newspaper's counsel and effectively conceded that the Court's April 6, 2018, order prohibiting post-verdict juror contact

4833-0619-3768, v. 1

violated the First Amendment.  To this end, Attorney Hamil's e-mail announced Judge Vogel's intent to send a letter to the *DePina* jurors advising that a reporter from *The Providence Journal* was interested in speaking with them, and instructing that if they wished to speak with the reporter, they should first contact the Court in order to "share [their] contact information with the reporter."  At no time did Attorney Hamil offer any reason why Judge Vogel entered the April 6th Order.  In light of Judge Vogel's proposed letter, Attorney Hamil inquired as to *The Providence Journal's* "intentions moving forward with the … [lawsuit]."  A copy of the April 25, 2018, e-mail and attached letter is attached hereto as **Exhibit F**.

29.     *The Providence Journal* promptly objected to Judge Vogel's proposed letter, which would only exacerbate the First Amendment deficiencies plaguing the April 6th Order by inserting Judge Vogel as a gatekeeper between the press and the *DePina* jurors.  On April 26, 2018, counsel for *The Providence Journal* provided the Court's counsel with a revised version of Judge Vogel's letter.  The Newspaper's proposed revisions removed language from the letter requiring any juror who was interested in speaking with the reporter from first being required to contact the Judge.  The Newspaper's position is that requiring Jurors to affirmatively contact the Court before being interviewed effectively chills a juror's interest/willingness to be interviewed and decreases the likelihood that a juror will take steps to facilitate the interview.  Whereas, if there is no impediment to a reporter contacting a juror directly, the likelihood of a juror consenting to being interviewed increases.  For this reason, *The Providence Journal* proposed that Judge Vogel advise the *DePina* Jurors that the Court provided the reporter each juror's name and contact information, that the reporter may be contacting them, and that they were free to speak with the reporter if they so choose.

4833-0619-3768, v. 1

30.     Unbeknownst to *The Providence Journal* – and notwithstanding numerous communications between the parties in an effort to resolve the matter – Judge Vogel sent the letter to the jurors on April 26, 2018, without any of *The Providence Journal*'s proposed edits.  It was not until April 30, 2018, that the Newspaper learned that the unrevised letter had been sent to the empaneled jurors, and it was not until May 10, 2018, that *The Providence Journal* was provided a copy of the final version of the letter, which was attached as an exhibit to defendant's opposition to the Newspaper's emergency motion.

31.     Making matters worse, on May 9, 2018, the Office of the Jury Commissioner sent a letter to counsel for *The Providence Journal* advising that access to "jury pool lists" would be limited to 2 days a week.  The letter stated that while "jury pool lists are publicly available in the Jury Commissioner's Office," they are only available on "each day that a jury pool is convened in Providence, currently each Monday and Wednesday.  The letter provided no explanation of other reasons for limiting access to the jury pool list.  The arbitrary restriction on access to the jury pool list violates the First Amendment.  A true an accurate copy of the May 9, 2018, letter from the Jury Commissioner is attached here as **Exhibit G**.

F.     *DePina* **Sentencing Hearing and "Comments" Issued by Judge Vogel.**

32.     On May 16, 2018, Jorge DePina was sentenced to life in prison.  At the commencement of the sentencing hearing, Judge Vogel announced that, following the proceeding, she would remain on the bench to make a few "comments," copies of which would be made available through the Court Clerk.

33.     Reporter Mulvaney attended the sentencing hearing.  Also in attendance were other Justices of the Rhode Island Superior Court.  Upon information and belief, none of these justices had any direct involvement with or oversight of the *DePina* case.  Following the sentencing, Judge Vogel read her prepared statement ("Comments From Associate Justice Netti

C. Vogel, May 16, 2018") (Exhibit C) in open court.  Judge Vogel occasionally looked at Reporter Mulvaney as she read from her prepared statement and, upon information and belief, intended her statements to serve as a public rebuke of the efforts Reporter Mulvaney and *The Providence Journal* made to interview the *DePina* jurors and obtain access to judicial records, with the purpose of discouraging the Newspaper from its pursuit of access to judicial records on behalf of the public it serves.  In her statement, Judge Vogel also noted that – in the future – she would "not preclude the media from contacting jurors."  Judge Vogel's statement contradicts the April 6th Order and her stated practice with respect to juror contact, made no mention of the Court's role as a gatekeeper, and was not an order of the Court.  Therefore, while the specific order in the DePina case has been lifted, there is nothing to stop the Court from continuing to impose post-verdict restrictions on access to jurors in future cases.

34.     Judge Vogel's May 16th "comments" were inaccurate and/or misleading in several respects.  For example, Judge Vogel stated that she forbade any contact with the jurors following the entry of the verdict "[s]olely out of concern for [their] safety and protection...."  To date, however, no evidence has been offered on the record (or otherwise) that any juror's safety or security was ever in jeopardy.  Indeed, at the May 14th hearing, the Newspaper's counsel pressed opposing counsel to articulate the factual basis for barring post-verdict interview, but no reasons were provided.  Further, Judge Vogel stated that none of the jurors "agreed to speak to the paper."  In fact, several jurors, including the foreman, spoke with Reporter Mulvaney and issued a collective statement.

**G.     Refusal To Release the Jury Cards.**

35.     In the Memorandum of Law filed on May 10th, the Rhode Island Superior Court provided new information about the jury selection process as well as the nature of the judicial records generated in connection with jury selection and empanelment.  According to the

Memorandum of Law, at the start of trial, a list of *potential* jurors (the so-called "petit jury list")

is generated by the Jury Commissioner.  Upon information and belief, the petit jury list contains

the names of the potential jurors, identifies the city or town where the potential juror lives, and

states the potential juror's occupation.  Each potential juror is also assigned a unique number

(referred to on the petit jury list as a "Badge Number").  The petit jury list is available to the

public, but only on days of the week that a "jury pool is convened in Providence, currently each

Monday and Wednesday." *See* Ex. G.

36.    In the *DePina* case, potential jurors identified in the petit jury list were called by

the Clerk in open court by their Badge Number (not their name), *voir dire* was conducted, and

sixteen jurors were empaneled for trial.  The Clerk of Court created an official record of the

jurors who were selected and empaneled in the *DePina* case on a "jury card."  Upon information

and belief, the jury card identified by number and/or name each of the sixteen jurors who were

empaneled in the *DePina* case, all counsel of record, the case caption, and the identity of the

presiding judge.  Upon information and belief, the jury card from the *DePina* case, as well as

other civil and criminal cases, is remitted to the Jury Commissioner's Office

37.    Notwithstanding that the information contained in the jury card is derived directly

from the petit jury list – a judicial document to which the press and general public concededly

have a right of access – and is created by the Clerk of the Court during the jury selection process,

the Rhode Island Superior Court takes the position in its Memorandum of Law that a

constitutional right of access does not apply to the jury card.  If a reporter or citizen wants to

learn the identity (by name) of the empaneled members of the jury, they are required to sit

through the entire *voir dire* process and take note of the empaneled jurors' respective Badge

Numbers, which can then be cross-referenced against the petit jury pool list.  Through that

4833-0619-3768, v. 1

indirect and cumbersome process the names of the empaneled jurors will be identified. Alternatively, if a reporter is unable to attend the entire *voir dire* process, the reporter can order and pay for a transcript of the proceeding, wait for the transcript to be generated and made available, read the entire *voir dire* transcript to identify the empaneled jurors by their Badge Numbers, and then cross-reference those numbers against the petit jury list. As a final option, a reporter could order and obtain a copy of the transcript of the last day of trial and review it to determine which jurors were selected from the jury to deliberate, and compare those Badge Numbers to the petit-jury list, a burdensome approach similarly entailing unnecessary and intolerable delays in access. A timely and more efficient manner of ascertaining the identities of the jurors would be to obtain the jury card for comparison against the petit-jury list.

38.     Following the initiation of this lawsuit, *The Providence Journal* obtained a copy of a portion of the transcript from the *DePina* trial (for the proceeding that occurred on April 4, 2018) from the Court Clerk (by e-mail) on May 10, 2018. The transcript identified the jurors who were selected to deliberate in the *DePina* case by their Badge Numbers only: 149, 145, 204, 22, 170, 220, 133, 124, 116, 167, 83 and 33. A true and accurate copy of the May 10, 2018, e-mail with attachment is attached hereto as **Exhibit H**.

## CAUSE OF ACTION

### COUNT 1
### (Declaratory Judgment)

39.     *The Providence Journal* repeats and realleges each and every allegation above as if set forth in full herein.

40.     A controversy has arisen regarding access to the jury card from the *DePina* case, access to the petit jury list each day the Office of the Jury Commissioner is open to the public, and the role of the trial court judge as a gatekeeper following entry of a verdict which has the

15

effect of thwarting the media's access to jury members who may otherwise consent to being interviewed.

41.     Even though *The Providence Journal* was eventually able to identify and interview members of the *DePina* jury, this occurred only because the Newspaper initiated legal action, in the absence of which the April 6th Order would have continued to violate the press and public's constitutional and common law rights by prohibiting post-verdict access to the jurors. Judge Vogel's comments following the May 16th sentencing hearing wherein she announced she would no longer "preclude the media from contacting jurors" provide little guarantee that the Court will not impose post-verdict restrictions on access to jurors in future cases.   As a preliminary matter, the comments are not an order of the court, but merely an expression of Judge Vogel's future intent.   As such, there is nothing to preclude Judge Vogel from abandoning or modifying her stated future approach to jury access.   Moreover, the comments are contradicted by prior orders and practices, and do not address the Court's role as a gatekeeper.   A judgment from this Court clarifying and confirming the First Amendment principles governing juror contact is, therefore, required.

42.     The Newspaper is also concerned that Judge Vogel's directive to the *DePina* jurors in the letter she sent after they had been released from duty requiring any member who wished to speak to the Newspaper to first contact the Court to arrange for an interview has had a chilling effect on the jurors' willingness to be interviewed and impermissibly establishes the judge as a gatekeeper of public access.   If, as required by the First Amendment, there is no impediment to a reporter contacting a juror directly, the likelihood of a juror consenting to being interviewed increases.

43.     Pursuant to the right of access to judicial proceedings and court records established under the First Amendment to the United States Constitution and Rhode Island common law, the press and the public are presumptively entitled to access judicial documents and to speak with any juror who is willing to grant an interview.

44.     A declaratory judgment from this Court affirming that the press and public have a presumptive right of access to both the jury card from the *DePina* case and the petit jury list each day the Office of the Jury Commissioner is open, and – in the absence of a compelling government interest supported by specific factual findings made on the record – directing Judge Vogel not to prohibit the media from interviewing post-verdict willing members of the jury in the future is therefore warranted.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff LMG Rhode Island Holdings, Inc. respectfully requests that the Court enter judgment under the First Amendment and Rhode Island common law declaring that: (a) post-verdict, in the absence of a compelling government interest demonstrated by specific, on-the-record factual findings, Judge Vogel may not prohibit the media from contacting jurors or otherwise impede the jury interview process; (b) the press and public are presumptively entitled to access to the so-called "jury card" from the *DePina* case as well as "jury cards" generated in other civil and criminal cases; and (c) the petit jury pool list shall be made publicly available during normal business hours of the Office of the Jury Commissioner.

4833-0619-3768, v. 1

DATED: June 7, 2018

PANNONE LOPES DEVEREAUX
& O'GARA LLC

By: _____

William E. O'Gara (4257)
1301 Atwood Avenue, Suite 215 N
Johnston, RI 02919
Tel: (401) 824-5100
Fax: (401) 824-5123
Email: wogara@pldolaw.com

**OF COUNSEL:**

**GREENBERG TRAURIG, LLP**

Michael J. Grygiel (*pro hac vice*
  application forthcoming)
John F. Farraher, Jr.
Zachary C. Kleinsasser
One International Place
Boston, Massachusetts 02110
Tel: (617) 310-6000
Fax: (617) 897-0993
Email:  grygielm@gtlaw.com
        farraherj@gtlaw.com
        kleinsasserz@gtlaw.com

*Attorneys for Plaintiff LMG Rhode
Island Holdings, Inc., publisher of
The Providence Journal*

4833-0619-3768, v. 1

## VERIFICATION

I, Kathleen Mulvaney, on behalf of LMG Rhode Island Holdings, Inc., publisher of *The Providence Journal*, having read the foregoing Verified Complaint, make oath that the facts recited herein are true and correct, except as to matters herein stated to be on information and belief, and as to those matters I believe them to be true to the best of my knowledge, information and belief.

**SIGNED UNDER PAINS AND PENALTIES OF PERJURY THIS 6th DAY OF JUNE 2018.**

LMG RHODE ISLAND HOLDINGS, INC.

By: Kathleen Mulvaney, duly authorized

20